**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

BARTHOLOMEW R. SCOTT,      )
                            )
           Plaintiff,    )
                            )
     v.                 )          1:16CV1249
                            )
ORANGE COUNTY JAIL, et al.,  )
                            )
          Defendants.   )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on "Defendants' Motion for Summary Judgment" (Docket Entry 37). For the reasons that follow, the Court should grant the instant Motion.

INTRODUCTION

Plaintiff filed a form Complaint under 42 U.S.C. § 1983, which he did not sign under oath or subject to perjury penalties. (See Docket Entry 2 at 9.)[1] The Court (per United States District Judge Catherine C. Eagles) dismissed (A) all claims against Defendant Orange County Jail, (B) the claim against the other Defendants, "Ofc. Sgt. Thompson," "Ofc. Ivey," "Ofc. Milan" (id. at 1)[2]

---

[1] Pin citations refer to the page numbers in the footer appended to documents upon their filing via the CM/ECF system.

[2] Elsewhere, the Complaint often spells Defendant Ivey's last name "Ivy." (See Docket Entry 2 at 2-4, 6-7.) In quoting Plaintiff's filings, this Recommendation generally notes (without
(continued...)

(collectively, "Defendants"), for "Intentional Tort" (also labeled "Intentional Infliction of Emotional Distress") (id. at 8), and (C) the claim against Defendants for "Prima Facie Tort" (also described as "selective shakedowns done, intended to hault [sic] efforts of relief" (id. at 6)), to the extent it sought relief for lost property via a procedural due process theory. (See Docket Entry 28 at 3.) The following eight claims thus remain:

1) "Plaintiff arrived at the Orange County jail . . . and was put in the hole (a place intended for inmate punishment) upon processing in" (Docket Entry 2 at 3; see also id. ("Plaintiff was kept in the hole for more than a year and punished, without any reason given to explain why. . . . The situation added stress [and] frustration due to . . . restrictions . . . [s]uch as 23 hour lockback, phone time restriction, exposure to black mold and hazardous chemicals, [and] selective shakedowns . . . ."));

2) Plaintiff "[c]an't get proper help from psych. doc" (id. at 4; see also id. ("[Defendants] used what they hear [Plaintiff] tell the psych. doctor to taunt [Plaintiff], laugh, [and] instigate issues between [Plaintiff] and other inmates. [Defendants] used to make a habbit [sic] of comeing [sic] over the intercome [sic] late [at] night saying kill yourself in [a] low devilish voice."));

---

[2](...continued)
correcting) other misspellings and grammatical errors, but applies standard capitalization conventions for ease of reading.

3) "[n]o rulebook [was] given [to Plaintiff] for more than 8 months" (id.; see also id. ("When [Plaintiff] finally got [a rule book,] it was greatly lacking and ineffieant [sic] to issue of the jail and direction of how and what to do. . . . No sooner than [Plaintiff] can conform to one shifts [sic] way of doing things, the next shift chastises [him] for it."));

4) Plaintiff's "[m]edications had to be increased due to the increased issues and conditions in the jail" (id.);

5) Plaintiff was "[h]oused improperly" (id. at 5; see also id. ("[Plaintiff is] a state inmate and [is] not supposed to be housed with federal inmates. However, they continue to do so regardless to [sic] request that they stop. As a result, a radicalist jumped on [Plaintiff] and beat [Plaintiff] up for being a Christian. . . . [T]hey continue to put people in here with [Plaintiff] that just came from fighting with them or somebody." (internal paragraph letter omitted)));

6) Plaintiff's "[d]iet and religious food restrictions [are] not honored" (id.; see also id. ("[Plaintiff] made them aware at intake, in person and ultimately on grievance forms that for religious reasons [he] do[es]n't eat red meat or pulverized meat and [he] requested a substitute. They started honoring the no red meat part about a year ago. As a result[, Plaintiff is] forced to go hungry, or eat it." (internal paragraph letter omitted)));

7) Plaintiff's "[f]ood [was] tampered with" (id. at 6; see also id. ("Hair is often found in food. . . . Drink is still currently served in old discarded cleaner bottles [and] milk jugs. . . . [H]ot or cold drink in those type of containers continuely [sic] cause the porus plastic to breed bacteria . . . . All types of DNA [are] found in [Plaintiff's] food on [Defendant] Thompson's shift." (internal quotation marks omitted))); and

8) "selective shakedowns [were] done . . . to hault [sic] [Plaintiff's] efforts of relief" (id.; see also Docket Entry 28 at 3 (allowing litigation of said allegations as claim for "active[] interfer[ence] with [Plaintiff's] access to the courts")).

Defendants' Answer denies all of the material factual allegations pertaining to the foregoing claims. (See Docket Entry 33.) Following a six-month period for discovery (see Docket Entry 24 at 14), Defendants moved for summary judgment (Docket Entry 37; see also Docket Entry 38 (Defendants' summary judgment brief); Docket Entry 38-9 (Declaration of Defendant Ivey under penalty of perjury); Docket Entry 38-10 (Declaration of Defendant Milan under penalty of perjury); Docket Entry 38-11 (Declaration of Defendant Thompson under penalty of perjury)). The Clerk then notified Plaintiff of his "right to file a 20-page response in opposition . . . accompanied by affidavits setting out [his] version of any relevant disputed material facts or . . . any other responsive material." (Docket Entry 39 at 1; see also id. ("Your failure to

respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [Defendants'] contentions are undisputed and/or that you no longer wish to pursue the matter.").)  Plaintiff thereafter filed a summary judgment response (Docket Entry 41), a summary judgment brief (Docket Entry 42), and four hand-drawn diagrams of two locations within the Orange County jail (Docket Entries 42-1, 42-2, 42-3, 42-4).[3]  Defendants replied.  (Docket Entry 44.)

## DISCUSSION

"Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Welton v. Durham Cnty., No. 1:17CV258, 2018 WL 4656242, at *2 (M.D.N.C. Sept. 27, 2018) (unpublished) (citing Fed. R. Civ. P. 56(a)).  "The moving party has the initial burden of demonstrating the absence of any material issue of fact; [however,] once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material

_____

[3] Plaintiff did not sign his summary judgment response or brief under oath or penalty of perjury.  (See Docket Entry 41 at 3; Docket Entry 42 at 19.)  Although not reflected on the Docket, the hard-copy file for this case contains a photocopy of a purported "Orange County Inmate Handbook" (labeled "Plaintiff's Exhibit - E") submitted with Plaintiff's summary judgment-related materials, as well as a note bearing his initials (attached to the envelope used to mail those materials), which states:  "Attn, Clerk:  Copy of Exhibit E not provided Defendants.  No photocopy capability."

fact requiring a trial." <u>Heggins v. City of High Point</u>, No. 1:16CV977, 2017 WL 6514681, at *2 (M.D.N.C. Dec. 20, 2017) (unpublished) (emphasis added); <u>see also</u> <u>Equal Employ. Opportunity Comm'n v. Womble Carlyle Sandridge & Rice, LLP</u>, No. 1:13CV46, 2014 WL 2916851, at *4 (M.D.N.C. June 26, 2014) (unpublished) ("On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence . . . ."), <u>aff'd</u>, 616 F. App'x 588 (4th Cir. 2015).

In assessing such matters, "the Court [does] not consider[] 'facts' set forth in [summary judgment] briefs that are not supported by citations to admissible evidence." <u>Maisha v. University of N.C.</u>, No. 1:12CV371, 2015 WL 277747, at *1 (M.D.N.C. Jan. 22, 2015) (unpublished), <u>aff'd</u>, 641 F. App'x 246 (4th Cir. 2016). Additionally, "[u]nless [ D]efendants admitted [an] alleged fact in their [A]nswer, the Court [does] not consider[ the] unverified statements in [Plaintiff's C]omplaint. [Such] allegations are not under oath and are not evidence." <u>Id.</u> (internal parenthetical citations omitted) (citing <u>Higgins v. Scherr</u>, 837 F.2d 155, 156-57 (4th Cir. 1988)).

### "Put in the Hole"

The Complaint first alleges that, when Plaintiff "arrived at the Orange County Jail . . .[, he] was put in the hole . . . [and] was kept in the hole for more than a year and punished, without any

-6-

reason given to explain why." (Docket Entry 2 at 3.) Such actions may violate the Constitution. See generally Williamson v. Stirling, 912 F.3d 154, 173-86 (4th Cir. 2018) (discussing Due Process Clause limitations on long-term solitary confinement of pretrial detainees). "To establish personal liability under § 1983, however, [ P]laintiff must affirmatively show that [Defendants] acted personally in the deprivation of [ P]laintiff's rights. That is, [Defendants'] own individual actions must have violated the Constitution. Importantly, mere knowledge of such a deprivation does not suffice." Id. at 171 (internal brackets, citations, and quotation marks omitted).

Defendants Ivey and Milan have declared under penalty of perjury that they "cannot determine which cell or pod a specific inmate is placed in . . . [or] place any inmate in administrative or disciplinary segregation." (Docket Entry 38-9 at 2; Docket Entry 38-10 at 2-3.) Defendant Thompson, in turn, has averred that, although he possessed "some limited authority to make temporary housing determinations, . . . [he] did not make any housing determinations regarding [Plaintiff]." (Docket Entry 38-11 at 3.) To the extent Plaintiff's Complaint or summary judgment-related filings contain (unverified) factual assertions suggesting otherwise, those assertions do not constitute evidence. See Maisha, 2015 WL 277747, at *1. Accordingly, the Court should grant summary judgment to Defendants on Plaintiff's claim for placement

"in the hole," because the uncontested evidence shows that they did not "act[] personally in [any such] deprivation of [his] rights," Williamson, 912 F.3d at 171 (internal quotation marks omitted).

In connection with its "hole"-related claim, the Complaint alleges that Plaintiff suffered "hazardous exposer [sic] to black mold . . . [with w]alking pnuemonia [sic], fluid in lung, and phantom coughing happen[ing] as a result." (Docket Entry 2 at 3.) Such exposure could contravene the Constitution. See generally DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . reasonable safety[, ]it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."). However, any claim for such a constitutional violation would require Plaintiff to show that Defendants "had a sufficiently culpable state of mind, which, in this context, consists of deliberate indifference to [his] health or safety. This subjective inquiry requires evidence suggesting that [Defendants] had actual knowledge of an excessive risk to [ P]laintiff's [health or] safety." Raynor v. Pugh, 817 F.3d 123, 127-28 (4th Cir. 2016) (emphasis added) (internal citation and quotation marks omitted). Defendants have denied (under penalty of perjury) any "aware[ness] of there ever being any 'black mold' problem in the [Orange County

-8-

jail].” (Docket Entry 38-9 at 3; Docket Entry 38-10 at 3; Docket Entry 38-11 at 3-4; see also Docket Entry 38-4 at 2-3, 10-11, 12-13, 14-15, 16-17, 64-65 (documenting six grievances submitted by Plaintiff regarding “black mold,” none of which reflect receipt by Defendants).) That record evidence stands uncontradicted, because Plaintiff’s Complaint and summary judgment-related filings do not qualify as evidence, see Maisha, 2015 WL 277747, at *1. Any “black mold”-related aspect of Plaintiff’s “hole”-related claim against Defendants thus fails as a matter of law.[4]

As a final matter, to the extent the Complaint asserts any official capacity claim against Defendants regarding Plaintiff’s placement “in the hole” or exposure to “black mold” the Court should enter summary judgment against him. Under Section 1983, “claims against officers in their official capacities are claims against the entities for which the officers were acting. . . . [T]o establish liability on behalf of the entity, it must be shown

---

[4] The Complaint also vaguely adverts to Plaintiff’s exposure to “hazardous chemicals.” (Docket Entry 2 at 3.) “The [C]ourt, however, need not accept . . . conclusory assertions of wrongdoing unaccompanied by factual enhancement.” Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605, 618 (M.D.N.C. 2014); see also McLaughlin v. Nationstar Mortg. LLC, No. 1:18CV593, 2018 WL 4356754, at *2 (M.D.N.C. Sept. 12, 2018) (unpublished) (“While [a plaintiff] does not have to prove her case in the complaint, she does have to provide something beyond bare conclusions . . . .”). In addition, because (as detailed in the Introduction) the Complaint contains a separate claim (discussed below) for “selective shakedowns” (Docket Entry 2 at 6), this Recommendation will not address (at this point) the fleeting reference to such matters buried within the “hole”-related claim’s allegations (see id. at 3).

that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." <u>Giancola v. State of W. Va. Dep't of Pub. Safety</u>, 830 F.2d 547, 550 (4th Cir. 1987). As Defendants have observed, "Plaintiff has not alleged, and the record does not show, any policy or custom [of Defendants' governmental employer] that deprived [Plaintiff] of any constitutional rights." (Docket Entry 38 at 14; <u>see also</u> Docket Entry 2 at 3 (making no allegations that Plaintiff "was put in the hole" or exposed to "black mold" due to policy or custom of Defendants' governmental employer); Docket Entry 42 at 17 (defending official capacity claim(s) not by identifying policy or custom of Defendants' governmental employer that caused constitutional violation, but by denying necessity of such proof, citing <u>West v. Atkins</u>, 487 U.S. 42 (1988), and <u>Odom v. South Carolina Dep't of Corr.</u>, 349 F.3d 765 (4th Cir. 2003)).)[5]

In sum, the Court should grant summary judgment in favor of Defendants on the entirety of Plaintiff's "hole"-related claim.

---

[5] The cases cited in Plaintiff's summary judgment brief do <u>not</u> address (much less abolish) the "policy or custom" element of official capacity claims under Section 1983. <u>See</u> <u>West</u>, 487 U.S. at 43 ("This case presents the question of whether a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts 'under color of state law,' within the meaning of [Section] 1983, when he treats an inmate."); <u>Odom</u>, 349 F.3d at 767 (vacating "entry of summary judgment based on qualified immunity in favor of correctional officers").

<u>"Can't Get Proper Help from Psych. Doc"</u>

The second claim in Plaintiff's Complaint merely asserts in conclusory fashion that he "[c]an't get proper help from [a] psych. doc." (Docket Entry 2 at 4.) Plaintiff has not alleged factual matter (let alone presented evidence) showing (A) a denial of adequate mental health care in the Orange County jail, or (B) action/inaction by Defendants that caused any such denial. (<u>See</u> <u>id.</u>; <u>see also</u> Docket Entry 41 at 1-3 (failing to address this claim); Docket Entry 42 at 1-20 (same).) As a result, the Court should grant summary judgment for Defendants on this claim (in both their individual and official capacities), because (in the words of their summary judgment brief): "Plaintiff has presented no evidence regarding this claim. . . . Even if the 'title' of this claim could be read as raising a conditions-of-confinement issue, the record shows no constitutional violation." (Docket Entry 38 at 17; <u>see also</u> <u>id.</u> at 5 ("Plaintiff was provided mental health treatment at [the jail] for various disorders. The entirety of the mental health providers' progress notes were produced in discovery [at Plaintiff's request as documented in Docket Entry 38-5] and are attached as [Docket Entry 38-6]."); Docket Entry 42 at 5-6 (acknowledging mental health treatment in Orange Country jail).)[6]

---

[6] To the extent this claim focuses not on inadequate mental health care, but rather on Defendants "us[ing] what they hear [Plaintiff] tell the psych. doctor to taunt [Plaintiff], laugh,
(continued...)

<u>"No Rulebook Given"</u>

Regarding its third claim, Plaintiff's Complaint states, in material part, that "[n]o rulebook was given [to him] for more than 8 months" (Docket Entry 2 at 4), "[w]hen [he] finally got one[,] it was greatly lacking and inefficiant [sic] to issues of the jail" (<u>id.</u>), and "[n]o sooner than [he] can conform to one shifts [sic] way of doing things, the next shift chastises [him] for it" (<u>id.</u>). This claim (whether viewed from an individual or official capacity perspective) fails as a matter of law. <u>See</u> <u>Wells v. Cook</u>, No. 1:11CV324, 2012 WL 1032689, at *1 (W.D.N.C. Mar. 27, 2012) (unpublished) ("The instant case arises out of treatment [the p]laintiff allegedly received while he was a [pretrial] detainee . . . . [The p]laintiff first alleges that he was not provided a written copy of the institution's rules and regulations. He alleges that he requested a copy . . ., but that he was informed . . . that there were no written rules[ and] that the rules vary

---

[6](...continued)
[and] instigate issues between [Plaintiff] and other inmates" (Docket Entry 2 at 4) and/or Defendants "mak[ing] a habbit [sic] of comeing [sic] over the intercome [sic] late [at] night saying kill yourself in [a] low devilish voice" (<u>id.</u>), the Court should enter summary judgment for Defendants, because "[v]erbal harassment or abuse by prison officials in itself does not state a constitutional deprivation under [S]ection 1983," <u>Johnson v. Laham</u>, No. 91-7296, 9 F.3d 1543 (table), 1993 WL 469160, at *3 (4th Cir. Nov. 15, 1993) (unpublished); <u>see also</u> <u>Cash v. Townley</u>, No. 7:12CV169, 2013 WL 1146233, at *5 n.1 (W.D. Va. Mar. 19, 2013) (unpublished) (ruling that prisoner's "allegations that [prison employee] made fun of [prisoner] fail to state a claim of constitutional magnitude").

depending on who was on duty. . . . [A]ssuming that [the p]laintiff's allegations are true, [he] simply has not alleged a violation of his federal constitutional rights." (internal citations and quotation marks omitted)); Philmlee v. Byrd, No. 4:10CV221, 2010 WL 6549829, at *4 (E.D. Ark. Oct. 21, 2010) (unpublished) ("[The p]laintiff's lack of a written copy of [the jail's] rules . . . is insufficient to establish a constitutional violation."), recommendation adopted, 2011 WL 1542655 (E.D. Ark. Apr. 23, 2011) (unpublished); Lewis v. Franzen, No. 80C634, 1986 WL 5225, at *2 (N.D. Ill. May 1, 1986) (unpublished) ("The Constitution in itself does not require prison officials to give inmates copies of prison rules and regulations."); Russell v. Oliver, 392 F. Supp. 470, 472 (W.D. Va. 1975) ("Failure to post [jail] rules is not per se a constitutional deprivation . . . . [E]ven if . . . the rules and regulations were not in fact posted, no constitutional claim cognizable under § 1983 is stated absent a showing by the plaintiff that he has been prejudiced as a result. [The p]laintiff does not allege that he has suffered any injury of constitutional dimension because of the failure to post the unit's rules; and this claim must therefore be dismissed."), vacated in part and remanded on other grounds, 552 F.2d 115 (4th Cir. 1977).

### "Medications Had To Be Increased"

The fourth claim in Plaintiff's Complaint seeks relief because his "[m]edications had to be increased due to the increased issues

and conditions in the jail." (Docket Entry 2 at 4.) As Defendants charitably commented in their summary judgment brief, "[i]t is unclear whether Plaintiff attempts to state an independent claim in this section of his Complaint – and what claim that could possibly be." (Docket Entry 38 at 18.) The Court "cannot be expected to construct full blown claims from sentence fragments, which is essentially what [Plaintiff] is seeking here." Beaudett v. City of Hampton, 775 F.3d 1274, 1278 (4th Cir. 1985). At a minimum, Plaintiff has not alleged (much less offered evidence showing) that Defendants "acted personally in [any medication-related] deprivation of [his] rights," Williamson, 912 F.3d at 171 (internal quotation marks omitted), or that any such deprivation occurred "pursuant to a custom or policy of the entity [that employed Defendants]," Giancola, 830 F.2d at 550. (See Docket Entry 2 at 4; Docket Entry 41 at 1-3; Docket Entry 42 at 1-20.) The Court therefore should enter summary judgment in Defendants' favor on any individual or official capacity component of this ambiguous claim.

### "Housed Improperly"

For its fifth claim, Plaintiff's Complaint alleges that he was "[h]oused improperly" (Docket Entry 2 at 5; see also id. ("[Plaintiff is] a state inmate and [is] not supposed to be housed with federal inmates. However, they continue to do so regardless to [sic] request that they stop. As a result, a radicalist jumped on [Plaintiff] and beat [Plaintiff] up for being a

Christian. . . . [T]hey continue to put people in here with [Plaintiff] that just came from fighting with them or somebody." (internal paragraph letter omitted)).) Although the Constitution entitles pretrial detainees to "reasonable safety," <u>DeShaney</u>, 489 U.S. at 200, Plaintiff cannot make out an individual capacity claim against Defendants for depriving him of that right, absent proof that they "acted personally in th[at] deprivation," <u>Williamson</u>, 912 F.3d at 171 (internal quotation marks omitted), "which, in this context, . . . requires evidence suggesting that [they] had actual knowledge of an excessive risk to [his] safety," <u>Raynor</u>, 817 F.3d at 127-28 (internal quotation marks omitted).

Defendants' declarations under penalty of perjury show the opposite. (<u>See</u> Docket Entry 38-9 at 2 (Defendant Ivey: "I have no authority to make inmate housing and classification determinations. I cannot determine which cell or pod a specific inmate is placed in, or whether specific inmates are placed in a cell or pod together."); Docket Entry 38-10 at 2-3 (same by Defendant Milan); Docket Entry 38-11 at 3 (Defendant Thompson: "I have never witnessed any members of the [jail] staff place an inmate in a cell with another inmate, while aware that there was a substantial risk that one inmate would attack the other. I would not tolerate any such actions, and I am confident that . . . the leadership at the [jail] would not either. I did not place any inmates in [Plaintiff's] cell with the knowledge that there was a substantial

risk that the inmate would attack [Plaintiff], and I am not aware of any facts or evidence that would suggest any allegation that this was done to [Plaintiff].").)  Even if Plaintiff's Complaint and summary judgment-related filings state something to the contrary, such statements (made without an oath or acknowledgment of perjury penalties) do not raise a material factual dispute, as they do not constitute evidence.  <u>See, e.g.</u>, <u>Heggins</u>, 2017 WL 6514681, at *2; <u>Maisha</u>, 2015 WL 277747, at *1.

Coordinately, Plaintiff cannot maintain any official capacity claim for housing decisions that denied him reasonable safety unless he links those decisions to "a custom or policy of the entity [that employed Defendants]," <u>Giancola</u>, 830 F.2d at 550. Again, Plaintiff has not even baldly asserted (let alone come forward with evidence) that any custom or policy of Defendants' governmental employer led to any deprivation of Plaintiff's right to reasonable safety in regard to housing.  (<u>See</u> Docket Entry 2 at 5; Docket Entry 41 at 1-3; Docket Entry 42 at 1-20.)

Simply put, Plaintiff's individual and official capacity claims for improper housing fail as a matter of law.

<u>"Diet and Religious Food Restrictions Not Honored"</u>

According to the sixth claim in Plaintiff's Complaint, his "[d]iet and religious food restrictions [were] not honored." (Docket Entry 2 at 5; <u>see also</u> <u>id.</u> ("[Plaintiff] made them aware at intake, in person and ultimately on grievance forms that for

religious reasons [he] do[es]n't eat red meat or pulverized meat and [he] requested a substitute. They started honoring the no red meat part about a year ago. As a result[, Plaintiff is] forced to go hungry, or eat it." (internal paragraph letter omitted)).) Assuming such allegations (if proven) could support a claim for deprivation of a federal right, individual liability still could only lie against Defendants if Plaintiff established that they "acted personally in th[at] deprivation," Williamson, 912 F.3d at 171 (internal quotation marks omitted).

Defendants, however, have averred that:

> [They were] not aware that [Plaintiff] did not eat red meat or pulverized meat, or that he had requested a substitute. Even if [they] had been aware of [his] request, [they] could have done nothing about it. . . . [They] ha[d] no authority or involvement in the procedure of requesting, processing, authorizing, or providing any inmate specific dietary accommodations.

(Docket Entry 38-9 at 3; Docket Entry 38-10 at 3; Docket Entry 38-11 at 4.) Any (unverified) factual contentions in Plaintiff's Complaint or summary judgment-related filings that might tend to contradict Defendants' above-quoted declarations lack evidentiary significance. See Maisha, 2015 WL 277747, at *1. Accordingly, the Court should grant summary judgment for Defendants in their individual capacities on this dietary restriction-related claim.

Any correlative, official capacity claim likewise falls short, because Plaintiff has failed to allege (much less to present proof) that a dietary restriction-related violation of his federal rights

stemmed from "a custom or policy of the entity [that employed Defendants]," Giancola, 830 F.2d at 550. (See Docket Entry 2 at 5; Docket Entry 41 at 1-3; Docket Entry 42 at 1-20.) The record thus warrants summary judgment against Plaintiff on that front as well.

## "Food Tampered With"

The seventh claim in Plaintiff's Complaint asserts that his "[f]ood [was] tampered with." (Docket Entry 2 at 6; see also id. ("Hair is often found in food. . . . Drink is still currently served in old discarded cleaner bottles [and] milk jugs. . . . [H]ot or cold drink in those type of containers continuely [sic] cause the porus plastic to breed bacteria . . . . All types of DNA [are] found in [Plaintiff's] food on [Defendant] Thompson's shift." (internal quotation marks omitted)).) To the extent that assertion raises a colorable constitutional claim, it still would require Plaintiff to prove (for individual capacity liability) that Defendants "acted personally in [such] deprivation of [his] rights," Williamson, 912 F.3d at 171 (internal quotation marks omitted), or (for official capacity liability) that the deprivation of his rights occurred "pursuant to a custom or policy of the entity [that employed Defendants]," Giancola, 830 F.2d at 550.

Any statements Plaintiff made about such matters in his Complaint and summary judgment-related filings do not constitute evidence competent for that task, because (as previously documented) he did not swear to them or certify them under penalty

-18-

of perjury.  See Maisha, 2015 WL 277747, at *1.  In contrast, Defendants have declared under penalty of perjury that:

> [They] have never witnessed any members of the [Orange County jail] staff tamper with any inmate's or detainee's food.  [They] would not tolerate any such actions, and [they are] confident that [the Orange County Sheriff] and the other leadership at the [Orange County jail] would not either.  [They] did not tamper with [Plaintiff's] food, and [they are] not aware of any facts or evidence that would support any allegations that [his] food was tampered with in any way while he was held in the [Orange County jail].

(Docket Entry 38-9 at 3; Docket Entry 38-10 at 3; Docket Entry 38-11 at 4.)

Under these circumstances, Defendants have established entitlement to summary judgment on Plaintiff's individual and official capacity, food-tampering claim.

### "Selective Shakedowns"

Finally, Plaintiff's Complaint alleges that "selective shakedowns [were] done . . . to hault [sic] [his] efforts of relief."  (Docket Entry 2 at 6; see also Docket Entry 28 at 3 (allowing claim to proceed under theory that "[D]efendants [we]re actively interfering with [Plaintiff's] access to the courts").) More specifically (as to this claim), the Complaint states that:

1) Defendant Thompson carried out "[t]wo shakedowns [of Plaintiff's cell] . . . within the same week" and previously "targeted [his] cell while [he was] outside [and also while [he] was downstairs and upstairs" (Docket Entry 2 at 6);

-19-

2) Plaintiff "ha[s] <u>only</u> ever been shook down by one shift in 2 and a half years" (<u>id.</u> (emphasis in original));

3) Defendants "were told immediately and prior to selective shakedowns that any legal items and documents were sensitive" (<u>id.</u> at 7);

4) "[l]egal marked items [were] still taken by [Defendants]" (<u>id.</u> at 6; <u>see also</u> <u>id.</u> at 7 (indicating "legal books, . . . legal discovery needed for relief and release from jail and its conditions, . . . [and] legal reference books . . . were taken" and describing "[i]tems taken [as] legal notes, discovery, . . . 70% of [Plaintiff's] discovery (perspective) 3 ft high stack of paper, [and] diary of events" (internal parenthetical letters omitted));

5) Plaintiff "made [Defendant] Thompson and staff immediately aware that [Plaintiff] had court [the following] Monday morning . . . [but t]hey refused [Plaintiff] [his] items again . . . [and,] as a result, [Plaintiff] could not present [his] case for clemency relief" (<u>id.</u> at 7; <u>see also</u> <u>id.</u> ("The judge specifically asked for something new that[,] because of the takeing [sic] of it, [Plaintiff] could not present."));

6) "[t]he judge set a new court date for one week later to give [Plaintiff] time to gather [his] info from the officers again . . . [but Defendant] Thompson refused again" (<u>id.</u>);

7) "[Plaintiff] went to court the following week and could not present [his] case" (<u>id.</u>); and

8) "[a]nother Sargent [sic] and Lieutenant returned 'some' of [Plaintiff's] books . . . and legal discovery" (id.; see also id. ("[Plaintiff] never got it all back, and [he is] missing more vital day of incident items from [his] discovery. . . . Without [his] legal refference [sic] books[, he] can't navigate this system for relief or prove [he] deserve[s] it threw [sic] motions with law refferences [sic] . . . .")).

In moving for summary judgment on that claim, Defendants made the following declaration(s) under penalty of perjury:

> [As part of their] duties as [detention officers in the] Orange County [jail, Defendants] . . . conduct periodic cell inspections ("shakedowns") to control contraband and safety hazards. During cell inspections, inmates are instructed to place on their mat all personal items they may wish to keep, and then pull the mat out of their cell. Inmates wait outside their cells while detention officers inspect and spray down the cells with liquid disinfectant. Items placed on the inmate's mats are inspected for contraband or other hazards. Excessive paper / books that an inmate wishes to keep are placed in an individual locker, and inmates are informed that they can request access as needed. Inmates are informed that any items left behind in their cell are considered trash and disposed of accordingly. Additionally, any paper items left behind are likely to be ruined by the spray-down. [Defendants] followed this standard practice and policy with regards to Plaintiff every time [they] inspected his cell.
>
> . . . [Plaintiff] believes [Defendants] targeted him for "selective shakedowns" with the intention of interfering with his legal proceedings. [Defendants] categorically deny that this is true. At [the Orange County jail], inspection and cleaning of different cell "pods" is assigned by shift, so that the same shift cleans the same set of cells every time. During [Plaintiff's] incarceration, [Defendants'] shift was responsible for cleaning the section of the jail where [Plaintiff's] cell

was located.  Thus, it would be accurate to say that only [Defendants'] shift ever "shook down" [Plaintiff's] cell, but this does not mean that [Defendants] were targeting [Plaintiff] for any impermissible reason.

. . . .

If an inmate at [the Orange County jail] has too much paper or too many books in his cell, it is considered a fire hazard. . . . [Plaintiff] alleges that a "3 ft high stack of paper," in addition to legal notes, grievances, receipts, and books, were taken from his cell.  While [Defendants] do not remember any specific inspections of [Plaintiff's] cell, a three-foot-high stack of paper, along with additional notes, receipts, and books, would be considered a fire hazard.  It would have been removed from [Plaintiff's] cell, and placed in his individual locker.  Items clearly marked as "legal papers" would not be trashed, even if they were left behind with other trash items, but they would still be removed from the inmate's cell if they were a fire hazard.

During [Defendants'] service [in the] Orange County [jail], [they] have never witnessed any members of the [Orange County jail] staff intentionally interfere with any inmate's or detainee's access to the courts. [Defendants] would not tolerate any such actions, and [they are] confident that [the Orange County Sheriff] and the other leadership at the [Orange County jail] would not either.  [Defendants] did not act in any way to unlawfully interfere with [Plaintiff's] access to the courts, and [they are] not aware of any facts or evidence that would support any allegations that [Plaintiff's] access to the courts was unlawfully interfered with in any way while he was held in the [Orange County jail].

. . . There is simply no time for the [Orange County jail s]taff, including [Defendants], to single out a prisoner or otherwise engage in the sort of activity that [Plaintiff] alleges.  The notion that [Defendants] would . . . unlawfully interfere with a prisoner's legal proceedings that in no way affect [them], and thereby place [their] job[s] and financial well-being in jeopardy, is simply absurd.

During the performance of [their] duties [in the] Orange County [jail], and particularly with respect to

> [Plaintiff], [Defendants] have acted in good faith,
> without malice, and to the best of [their] abilit[ies].
> During [their] dealings with [Plaintiff], and
> particularly with respect to the matters alleged in his
> Complaint, . . . [Defendants were] attempting to carry
> out [their] duties to enforce the policies of the Orange
> County [jail] to the best of [their] abilities.

(Docket Entry 38-9 at 3-5 (internal paragraph numbers omitted);
Docket Entry 38-10 at 4-6 (internal paragraph numbers omitted);
Docket Entry 38-11 at 4-7 (internal paragraph numbers omitted); see
also Docket Entry 38-11 at 5 ("[Plaintiff] also alleges that he
made [Defendant Thompson] 'and staff immediately aware that
[Plaintiff] had court Monday morning,' that [Defendant Thompson and
jail staff] refused to give [Plaintiff] his items over the weekend,
and that the following week [Defendant Thompson] 'refused again'
. . . . [Defendant Thompson] categorically den[ies] that these
allegations are true.").)

In the face of the foregoing evidence from Defendants that
they neither selectively targeted Plaintiff nor took his legal
materials for the purpose of interfering with his litigation
activity (but instead even-handedly enforced a reasonable,
facility-wide policy aimed at reducing fire hazards while still
preserving the ability of detainees to access legal materials),
Plaintiff responded with an unsworn, conclusory misstatement that
"Defendants concede[d]" engaging in an "unconstitutional 'search
and destroy' mission with [his] legal and personal property"
(Docket Entry 42 at 7).  Plaintiff cannot avoid summary judgment

-23-

that way.  See, e.g., Heggins, 2017 WL 6514681, at *2; Maisha, 2015 WL 277747, at *1.  Accordingly, as to this access-to-courts claim, the Court should grant summary judgment to Defendants (in both their individual and official capacities).

## CONCLUSION

The record entitles Defendants to judgment as a matter of law on all eight of Plaintiff's surviving claims.[7]

---

[7] Defendants alternatively argue that, "[b]ased on Plaintiff's failure to exhaust administrative remedies . . ., summary judgment is proper as to all claims." (Docket Entry 38 at 12; see also Docket Entry 38-3 at 3 (setting forth declaration under penalty of perjury of high-ranking official employed at Orange County jail about grievance procedure at that facility, including availability of administrative appeal).)  That argument relies on the following assertions in Defendants' summary judgment brief:  "Plaintiff submitted thirty-seven grievances, and on each grievance form had the option of checking the 'Appeal' box. . . .  Because Plaintiff never marked any relevant Inmate Grievance Form as an Appeal, he has not exhausted his administrative remedies for any of the claims in this lawsuit." (Docket Entry 38 at 12; see also id. at 4 ("Plaintiff submitted thirty-seven written grievances during his time at [the Orange County jail].  They are attached, in chronological order, as [Docket Entry 38-4]. Except for [one f]orm regarding some peanut bars . . ., Plaintiff never marked any of the Grievance/Request Forms he submitted as an Appeal."), 12 ("Plaintiff failed to file any grievances at all about being placed in 'the hole,' or not being able to 'get proper help from [a p]sych. [d]oc.'  And the only grievance that mentions food tampering does not give any specifics . . . .  For those three claims, Plaintiff did not even begin the administrative remedy process, much less exhaust it.").)  The mere statement in Defendants' summary judgment brief that 37 forms attached thereto represent the entire universe of grievances Plaintiff tendered while in custody at the Orange County jail does not constitute evidence for summary judgment purposes.  See Maisha, 2015 WL 277747, at *1.  The Court thus should not rely on Plaintiff's purported failure to exhaust his administrative remedies as an alternative basis for the entry of summary judgment for Defendants.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 37) be **GRANTED.**

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

January 25, 2019